329 So.2d 393 (1976)
J.G. PLUMBING SERVICE, INC., Appellant,
v.
COASTAL MORTGAGE COMPANY, a Florida Corporation, et al., Appellees.
No. 75-1540.
District Court of Appeal of Florida, Second District.
March 24, 1976.
Rehearing Denied April 19, 1976.
*394 Tim H. Warren of Icard, Merrill, Cullis, Timm & Furen, Sarasota, for appellant.
Robert P. Rosin of Rosin, Abel, Band & Rosin, Chartered, Sarasota, for appellee, Coastal Mortgage.
GRIMES, Judge.
This case involves the question of whether a construction mortgage lender on an unfinished construction project runs the risk of unpaid subcontractors and materialmen obtaining liens upon the undisbursed loan funds because of its failure to promptly notify them of a default in the mortgage.
Goba Construction Company (Goba), the owner/contractor of a condominium project, brought suit against Coastal Mortgage Company (Coastal), its construction mortgage lender, for specific performance, reformation, damages and other relief. Coastal responded to the complaint with a counterclaim to foreclose its mortgage on the unfinished project. J.G. Plumbing Service, Inc. (Plumbing), a plumbing subcontractor which had filed a mechanic's lien, was joined as a defendant in the mortgage foreclosure.
Plumbing included certain affirmative defenses in its answer to Coastal's claim *395 for mortgage foreclosure and filed a counterclaim of its own against Coastal. Upon Coastal's motion, the court entered an order striking the affirmative defenses and dismissing the counterclaim. Plumbing appeals this order.
The essence of the affirmative defenses and the counterclaim is that Plumbing is entitled to an equitable lien in the undisbursed construction loan proceeds because Coastal knew of Goba's defaults upon which it based its foreclosure action but delayed in asserting its rights thereby allowing Plumbing to continue to supply services, materials and labor to the job so as to enhance the value of the property upon which Coastal intended to foreclose. In support of its position, Plumbing relies strongly upon Fred S. Conrad Const. Co. v. Continental Assur. Co., Fla.App.1st, 1968, 215 So.2d 45, in which somewhat similar allegations were held to state a cause of action against a construction mortgage lender.
The parties to this appeal differ in their interpretation of the Conrad opinion in one material respect. Coastal construes the language of the opinion as indicating that the housing project for which the money had been loaned was completed. Plumbing points out that nowhere in the opinion is it specifically stated that the construction was finished. Plumbing further suggests that it makes no difference whether construction has been completed, but this is a proposition with which we cannot agree.
If all of the funds called for under the loan agreement have not been disbursed by the time construction has been completed, the construction lender then has more security than it bargained for. Should a default then occur, the mortgage lender will be in the position of being able to foreclose upon (and perhaps buy in) a completed building even though it has not yet disbursed all of the construction loan money. Under these circumstances, the Fourth District Court of Appeal recently held that a contractor who had completed the construction in accordance with his construction agreement was entitled to an equitable lien against the undisbursed balance of construction loan funds under the construction loan agreement. Morgen-Oswood & Associates, Inc. of Florida v. Continental Mortgage Investors, Fla.App.4th, 1975, 323 So.2d 684. In essence, that was a case in which relief was granted in order to avoid an unjust enrichment.
We do not believe that this principle can be extended to a situation where the default occurs before the construction contemplated by the loan agreement has been completed. Under these circumstances, the construction lender is left with the remedy of foreclosing upon a partially completed building. More often than not, the market value of a partially constructed building will be substantially less than the total cost of the labor and material which has already been incorporated into its construction. Under these circumstances, it cannot be said that the mortgagee has been unjustly enriched. To adopt the rule urged by appellant would place upon construction lenders the unwarranted duty of affirmatively keeping all of the subcontractors and materialmen advised of the status of the mortgage and might even discourage a mortgage lender from working with its mortgagor so as to enable him to correct his default and to complete the job.
We recognize that Plumbing alleged that included in the undisbursed construction loan funds held by Coastal is the 10% retainage for work completed by Plumbing. We further recognize that in Crane Co. v. Fine, Fla. 1969, 221 So.2d 145, the Supreme Court held that a company whose specially fabricated materials were furnished to a plumbing subcontractor and incorporated into a building was entitled to an equitable lien against funds due the plumbing subcontractor which had been withheld by the general contractor as retainage prior to the time that the plumbing subcontractor had abandoned the plumbing job. However, the court said:
"... We emphasize that this opinion is not to be interpreted as holding that a materialman is entitled to seek an *396 equitable lien merely because his materials are incorporated in the improvement. We hold only that, because of the special and peculiar equities shown by the record in this particular case, the plaintiff should not be foreclosed from seeking an equitable lien merely because he was entitled to but failed to perfect his statutory materialman's lien."
It is significant that the "hold-back" fund in Crane was in the hands of the contractor, and there was no construction mortgage lender in the picture. This distinction was illustrated in Hall's Miscellaneous Ironworks, Inc. v. All South. Inv. Co., Fla.App. 1st, 1973, 283 So.2d 372, in which the court affirmed the dismissal of a subcontractor's counterclaim for a superior equitable lien against land which was the subject of a mortgage foreclosure and into which its building materials had been incorporated. According to the allegations of the counterclaim, the subcontractor had been fraudulently induced by the owner/contractor to refrain from filing a notice of commencement which would have preserved its right to claim a mechanic's lien against the property superior to the mortgage which was not executed until two weeks before the project was abandoned. The court recognized that the subcontractor's allegations may have set forth special or peculiar equities sufficient to state a claim for an equitable lien against the property but held that in the absence of allegations that the mortgagee participated in the fraud, the lien of the mortgage was superior to any claim of lien by the subcontractor.
In the context of the instant case and consistent with Hall's, we readily agree that a construction lender should not be permitted to affirmatively mislead subcontractors and materialmen so as to induce them to continue to work upon and supply materials to the job to their detriment. A construction lender who falsely advises a materialman or subcontractor that the mortgage is not in default must suffer the consequences if further work and materials are incorporated into the project in reliance thereon. Such action would be equivalent to the fraud and misrepresentation which the courts have traditionally sought to remedy where possible through the imposition of an equitable lien. See Schraub v. Charest, Fla.App.3d, 1973, 277 So.2d 814.
Here, Plumbing alleged that it was without knowledge of any default or pending foreclosure "but to the contrary were told that the project would be completed, thereby causing damage to J.G. Plumbing." However, there is no allegation that it was Coastal which told Plumbing that the project would be completed. Therefore, we hold that neither Plumbing's affirmative defenses nor its counterclaim legally state a cause of action against the unpaid balance of the construction loan fund. If Plumbing can prove affirmative deception on the part of Coastal, it will have an opportunity to do so upon proper allegations, because the order from which this appeal was taken gave leave to amend.
AFFIRMED.
McNULTY, C.J., and HOBSON, J., concur.